**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

Civil Action No. 12-cv-00520-MSK

**JOEY J. MANGANELLO,**

    Plaintiff,

v.

**CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration,**

    Defendant.[1]

---

**OPINION and ORDER**

---

**THIS MATTER** comes before the Court on Plaintiff Joey J. Manganello's appeal of the Commissioner of Social Security's final decision denying his application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-33. Having considered the pleadings and the record, the Court

**FINDS** and **CONCLUDES** that:

**I.  Jurisdiction**

Mr. Manganello filed a claim for disability insurance benefits pursuant to Title II. He asserted that his disability began on December 31, 2005. After his claim was initially denied, Mr. Manganello filed a written request for a hearing before an Administrative Law Judge ("ALJ"). This request was granted and a hearing was held on April 15, 2010.

After the hearing, the ALJ issued a decision with the following findings: (1) Mr. Manganello met the insured status requirements of the Social Security Act through December 31,

---

[1] At the time Mr. Manganello filed his appeal, Michael J. Astrue was the Commissioner of Social Security. Carolyn W. Colvin is substituted as the Defendant in this action to reflect her designation as Acting Commissioner of Social Security, effective February 14, 2013.

2006; (2) he had not engaged in substantial gainful activity since December 31, 2005; (3) he had the following severe impairments: gouty arthritis of the hands, degenerative disease of the spine, a history of sensorineural hearing loss, mood disorder, and substance abuse; (4) none of these impairments, whether considered individually or together, met or were equivalent to one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1 ("the Listings"); (5) he had the Residual Functional Capacity ("RFC") to perform light work with the following limitations: the option to alternate sitting and standing at will; occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; no constant handling (gross manipulation); no constant fingering (fine manipulation); no constant feeling (sensory perception); avoiding exposure to rough uneven surfaces and hazards such as heights and machinery; no more than moderate noise exposure; moderate limitations in the ability to perform activities within a schedule; moderate limitations in the ability to complete a normal workday without interruptions from psychologically based symptoms; moderate ability to respond appropriately to changes in the work setting; and mild mental limitations in the ability to sustain an ordinary routine without special supervision; (6) Mr. Manganello was unable to perform any of his past relevant work; and (7) Mr. Manganello was not disabled because he was able to perform other jobs in the national economy, including cashier (II), order clerk, and food and beverage order clerk.

The Appeals Council denied Mr. Manganello's request for review of the ALJ's decision. Consequently, the ALJ's decision (Decision) is the Commissioner's final decision for purposes of judicial review. *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011). Mr. Manganello's appeal was timely brought, and this Court exercises jurisdiction to review the Commissioner of Social Security's final decision pursuant to 42 U.S.C. § 405(g).

## II.     Issues Presented

Mr. Manganello raises three challenges to the Commissioner's decision: the ALJ failed to (1) properly evaluate the opinions of Mr. Manganello's treating and evaluating physicians; (2) properly consider both Mr. Manganello's subjective complaints of pain and fatigue as well as his credibility; and (3) properly assess Mr. Manganello's RFC.

## III.    Material Facts

The material facts are as follows. The time period for determination of an alleged disability is short – Mr. Manganello claims that he became disabled on December 31, 2005 and his last insured date was December 31, 2006. Thus, to be awarded benefits, Mr. Manganello must establish that he was disabled between December 31, 2005 and December 31, 2006 and that the disability lasted for at least a year.

On December 31, 2005, Mr. Manganello was 48-49 years old. He had worked as a carpenter/handyman and as a meter reader.

Dr. Jahani was Mr. Manganello's primary physician from 2002 to 2009. Prior to the disability onset, Dr. Jahani treated Mr. Manganello for back, neck, and joint pain, stiffness, rheumatoid arthritis symptoms, and depression. In September 2005, Dr. Jahani noted that Mr. Mangello had chronic pain and may have been drinking more than he admitted. Mr. Jahani was depressed, and lacked funds for recommended blood testing. November 2005 treatment notes show that Mr. Manganello was experiencing right arm pain and weakness. In January 2006, Dr. Jahani diagnosed Mr. Manganello as suffering from seronegative rheumatoid arthritis, depression and adjustment disorder with mixed features. In April, Dr. Jahani increased Mr. Manganello's Vicodin prescription to address his pain and suggested a new anti-depressant. In December 2006, Dr. Jahani noted that Mr. Manganello's pain had increased, and that it was not controlled

with Vicodin. Mr. Manganello also displayed rheumatoid arthritis symptoms such as fatigue. Dr. Jahani characterized Mr. Manganello's rheumatoid arthritis as severe and noted that Mr. Manganello was unable to afford steroids of preference, to see a rheumatologist, or to have blood work done on a regular basis. Mr. Manganello's depression deepened when he did not take prescribed testosterone. In May 2007, Dr. Jahani reported that Mr. Manganello suffered from degenerative joint disease, depression, and chronic pain. An August 2007 MRI of Mr. Manganello's the lumbar spine showed disc dehydration, degenerative disk disease at L3-4, L4-5, and L5-S1; advanced degenerative changes of the lower lumbar facet joints, with some anterior subluxation of L4 on L5; moderate canal stenosis at L3-L4, with narrowing of the L3-L4 neural foramen on the right; moderate canal stenosis at L4-5, with moderate subarticular recess narrowing bilaterally; severe subarticular recess narrowing and moderately severe neural foraminal stenosis at L5-S1, and neural foramen on the left.

In January 2006, March 2008, and March 2009, Dr. Jahani also opined that Mr. Manganello was disabled or unable to work. In January 2009, he completed a Medical Source Statement that contained his opinion that Mr. Manganello's functional capacity was limited to occasionally lifting no more than twenty pounds, frequently lifting no more than ten pounds, and continuously lifting no more than five pounds; sitting, standing, and walking no more than half an hour at a time and no more than one hour in an eight hour workday; never bending, stooping, squatting, crawling, kneeling, climbing stairs or ladders, and reaching; no repetitive leg use, operation of motor vehicles, or reaching and working above shoulder level. Additionally, Dr. Jahani offered the opinions that Mr. Manganello's pain affected his ability to work, he was able to work no more than one hour per day, and he would miss more than four days per month due to pain.

4

Dr. Yu, a rheumatologist, examined Mr. Manganello in February and March 2009. Dr. Yu diagnosed Mr. Manganello as suffering with long standing inflammatory arthritis in his hands and elbows (likely due to chronic gouty arthritis), spinal stenosis, and degenerative osteoarthritis of the spine. She also observed evidence of chronic depression, fibromyalgia, and bursitis in his elbows. She recommended continuing with amitriptyline for sleep, fibromyalgia, and depression. She recommended diclofenac 75mg bid for his arthralgia and that he follow up with neurosurgery for his spinal stenosis. According to her treatment records, Mr. Manganello told Dr. Yu in February 2009 that his last flare-up of gout had been three or four years prior and that the symptoms resolved without medication after one week. Based on her physical examinations of Mr. Manganello, Dr. Yu concluded that Mr. Manganello had full range of motion for his shoulders, elbows, hips, knees, and ankles; his shoulders and wrists had no synovitis and his knees had no effusions; he had bursitis in his elbows, compression tenderness in his feet, and thickening combined with tenderness in his hand joints; and he was able to make a full claw and fist. She also ordered x-rays of Mr. Manganello's hands and performed a minor surgical procedure in which she drained fluid from Mr. Manganello's right elbow. Upon examination, this fluid revealed uric acid crystals consistent with gout.

Dr. Witwer, a neurologist, saw Mr. Manganello in April 2009. Based on a neurological and physical exam as well as x-rays, he concluded that: Mr. Manganello had normal motor function and was able to walk normally; he had normal range of motion and no spasms in his back and neck; and he had normal sensory reactions except for dullness to pinprick in his legs and ankles. Dr. Witwer diagnosed Mr. Manganello as suffering from severe spondylosis, grade I spondylolisthesis and severe degenerative changes at L4-L5, and axial back pain. He recommended conservative therapy with possible steroid injections as treatment.

Dr. Karls, a psychiatrist, evaluated Mr. Manganello in March 2009, followed by consultations in April and June 2009. Dr. Karls diagnosed Mr. Manganello with a depressive disorder due to chronic pain and the loss of his son in 2004. He noted that Mr. Manganello's depression had become more severe over time. In March 2009, Dr. Karls found Mr. Manganello to be oriented, to have normal thought processes, to have normal thought content, but gave him a Global Assessment of Functioning score of 40.[2] He recommended continuing amitriptyline and Cymbalta. In April and June 2009, Dr. Karls continued to observe depression symptoms, but noted improvement in affect and sleeping.

## IV.  Standard of Review

Judicial review of the Commissioner of Social Security's determination that a claimant is not disabled within the meaning of the Social Security Act is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). On appeal, a reviewing court's job is neither to "reweigh the evidence nor substitute our judgment for that of the agency." *Branum v. Barnhart*, 385 F.3d 1268, 1270, 105 Fed. Appx. 990 (10th Cir 2004) (*quoting Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

---

[2] A Global Assessment of Functioning (GAF) score is used to subjectively rate the social, occupational, and psychological functioning of adults on a scale of 1-100. Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. Text Revision 2000). A score of 40

The ALJ is required to consider the medical opinions in the record, along with the rest of the relevant evidence. 20 C.F.R. § 404.1527(b); 20 C.F.R. § 416.927(b).[3] According to § 404.1527(a)(2), "[m]edical opinions are statements from physicians and psychologists…that reflect judgments about the nature and severity of [the claimant's] impairments, including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite [his or her] impairment, and [the claimant's] physical or mental restrictions."

When evaluating medical opinions, a treating physician's opinion must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." § 404.1517(c)(2). An ALJ must give specific and legitimate reasons to reject a treating physician's opinion or give it less than controlling weight. *Drapeau v. Massanari*, 255 F.3d 1211 (10th Cir. 2001). Even if a treating physician's opinion is not entitled to controlling weight, it is still entitled to deference and must be weighed using the following factors:

> 1) the length of the treatment relationship and the frequency of examination;
> 2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; 3) the degree to which the physician's opinion is supported by relevant evidence; 4) consistency between the opinion and the record as a whole; 5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and 6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1300-01 (citation omitted); § 404.1527.

Having considered these factors, an ALJ must give good reasons in the decision for the weight assigned to a treating source's opinion. § 404.1527(c)(2). The ALJ is not required to

---

[3] All references to the Code of Federal Regulations (C.F.R.) are to the 2012 edition. Hereafter, the Court will only cite the pertinent Title II regulations governing disability insurance benefits, found at 20 C.F.R. Part 404, e.g § 404.1527. The corresponding regulations governing supplemental security income under Title XVI, which are substantively the same, are found at 20 C.F.R. Part 416.

explicitly discuss all the factors outlined in § 404.1527. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). However, the reasons the ALJ sets forth must be sufficiently specific to make clear to subsequent reviewers the weight the ALJ gave to the treating source's medical opinions and the reason for that weight. *Watkins*, 350 F.3d at 1301. Only medical opinions are given special consideration. § 404.1527(d)(3). Opinions on issues reserved for the Commissioner are not medical opinions, even if they come from a treating physician. § 404.1527(d). These include opinions that a claimant is disabled or unable to work. § 404.1527(d)(1).

**V.     Discussion**

The Court begins by observing that the time period for establishing a disability is one year – December 2005 to December 2006. Thus the issue is whether Mr. Manganello was or became disabled in that time period, and whether his disability lasted more than 12 months. The decision recognizes this limited temporal window in the assessment of Mr. Manganello's subjective complaints, but it is not an articulated consideration with regard to the assessment of the medical opinons. The Court notes that the opinons of Drs. Karls, Witwer and Yu were all expressed in 2009, several years after the operative time period.

The ALJ considered Dr. Jahani's medical opinions and found that they were not due either controlling weight or full weight because they were contradicted by other medical evidence in the record and internally inconsistent. Mr. Manganello argues that the ALJ's finding is not supported by substantial evidence and the ALJ did not perform the required two-step analysis of a treating physician's opinion because no specific weight was assigned to Dr. Jahani's opinion. The Commissioner argues that the ALJ's findings regarding Dr. Jahani's opinions were supported by substantial evidence, and that several of his opinions addressed issues reserved for the Commissioner and were, therefore, entitled to no weight.

Dr. Jahani offered two types of opinions. First, he stated on multiple occasions that Mr. Manganello was disabled or unable to work, including in January 2006, March 2008, March 2009, and June 2009. To the extent that these opinions addressed the ultimate issue of whether Mr. Manganello was disabled for purposes of an award as requested, the ALJ properly rejected them. § 404.1527(d).

In addition, Dr. Jahani offered medical diagnoses and assessments. During the alleged disability period, he diagnosed and treated Mr. Manganello for depression, arthritis, and chronic pain. Later, in June 2008, he stated that Mr. Manganello was in constant, severe pain and used a cane to walk. He completed a Medical Source Statement in January 2009 in which he outlined Mr. Manganello's functional limitations and stated that such limitations continuously existed from December 2005. According to Dr. Jahani, Mr. Manganello had significant limitations in his ability to lift, sit, walk, and stand, and Mr. Manganello was never able to perform certain movements, including bending, stooping, squatting, crawling, kneeling, climbing stairs or ladders, and reaching, was unable to use his legs repetitively, operate motor vehicles, or reach and work above shoulder level, and that due to pain, Mr. Manganello was able to work no more than one hour per day, and that Mr. Manganello would miss more than four days per month.

With regard to these opinions, the decision states: "I do not give full weight to [Dr. Jahani's] opinions and diagnoses. I cannot give controlling weight to [Dr. Jahani's] opinion[s] because they contradict each other and the examination findings of the examining rheumatologist and orthopedic specialist."

Turning first to the internal inconsistencies, the decision compares Dr. Jahani's 2009 assessment with prior treatment notes. It identifies only one with specificity:

> Interestingly, while the treating doctor said the claimant could not walk on
> 3/19/2009 (12F p. 3), his functional capacity assessment on 1/19/2009 shows no

>limits on the use of his hands and says he can lift 20 pounds occasionally and 10 pounds frequently, which is in the light range (10F p. 3). His 1/3/2006 office note says simply, "No working as a carpenter at this time." (2F p. 7).

It is hard from a superficial perspective, to see the perceived inconsistency.[4] If the inconsistency is between Mr. Manganello's condition in January and March of 2009, it is unclear why such inconsistency is important in assessing Mr. Manganello's condition in 2005 and 2006. If the inconsistency is between Dr. Jahani's treatment notes in 2005 and 2006 and his report in 2009, then reference to a single treatment note is inadequate. As noted earlier, Mr. Manganello was treated by Dr. Jahani over an extended period beginning in 2002. By 2005 and throughout 2006, treatment notes reflect intractable pain and a diagnosis of rheumatoid arthritis.

As to inconsistencies between the Dr. Jahani's diagnosis and assessment (in 2005 and 2006) and any other medical evidence in the record, the decision provides little particularity. It is clear that the ALJ was more impressed by the 2009 examination reports prepared by the rheumatologist, Dr. Yu, and neurosurgeon, Dr. Witwer, than by Dr. Jahani's 2009 report that covered the operative time period. But it is not clear how Mr. Manganello's condition in 2009 as observed by Dr. Witwer and Dr. Yu is relevant to his condition in 2005 and 2006.

Whether evidence from outside of the disability period is relevant depends, in part, on the nature of the impairment and its developmental or treatment course. *See Baca v. Dept. of Health & Human Svcs.*, 5 F.3d 476, 479 (10th Cir. 1993) (medical evidence developed after the disability period is pertinent if it discloses the severity and continuity of impairments existing during the disability period) (citations omitted). The decision does not explain how assessments

---

[4] Dr. Jahani did not conclude that Mr. Manganello could not *walk* on March 19, 2009, but rather that "[Mr. Manganello] remains totally and completely unable to *work*." (emphasis added). Similarly, in January, 2006 Dr. Jahani not only said that Mr. Manganello could not work as a carpenter; he also wrote that "pain limits [Mr. Manganello's] ability to work."

made in 2009 are indicative of conditions in 2005 and 2006, or to what degree later findings tend to conflict with earlier ones. Absent analysis of this kind, the Court finds that the weight accorded to Dr. Jahani's 2009 functional assessment is not supported by substantial evidence.

For the forgoing reasons, the Commissioner of Social Security's decision is **REVERSED** and **REMANDED.** The Clerk shall enter a Judgment in accordance herewith.

DATED this 18th day of September, 2013

BY THE COURT:

*[signature: Marcia S. Krieger]*

Marcia S. Krieger
United States District Judge